## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| JOHN ANTHONY CASTRO<br>12 Park Place, Mansfield, TX 76063<br><br>    Plaintiff,<br><br>v.<br><br>SECRETARY OF STATE WILLIAM<br>FRANCIS GALVIN<br>One Ashburton Place<br>Boston, MA 02108<br><br>DONALD JOHN TRUMP<br>1100 S. Ocean Blvd, Palm Beach, FL 33480<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

## TABLE OF CONTENTS

I.   Claim for Relief ................................................................................................ 8

   A.   Jurisdiction ............................................................................................... 8

   B.   Parties ....................................................................................................... 8

   C.   Venue ........................................................................................................ 9

   D.   Entitlement to Relief ................................................................................. 9

   E.   Demand for Relief ................................................................................... 11

II.   Summary of the Argument ............................................................................ 11

   A.   Plaintiff Has Political Competitor Standing ........................................... 12

     1.   Plaintiff Has an Injury-in-Fact ....................................................... 13

       (i)   Diminution in Votes .................................................................. 14

       (ii)   Ripeness of the Injury ............................................................. 15

         *(1)*   Fitness of the Issue: Plaintiff is an Active 2024 Presidential Candidate ............. 16

           (I)   Plaintiff is a Bona Fide Candidate ................................... 16

           (II)   Not Remote or Abstract: The Competition for Votes Has Already Begun ..... 17

         *(2)*   Threat of Severe Hardship if Judgment Withheld ............................................. 17

           (I)   Withholding Consideration Would Result in Plaintiff Losing Voters and Donors to a Constitutionally Disqualified Candidate ................................................. 19

           (II)   Withholding Consideration Would Risk the Controversy Not Being Timely Addressed by the U.S. Supreme Court Before the Primary Elections Thereby Mooting the Issue and Forever Denying Plaintiff Any Relief and Redressability ..... 19

           (III)   Withholding Consideration Would Compel Plaintiff to Invest Millions of His Own Funds to Campaign with Lower Odds of Success ............................................. 20

       (iii)   Plaintiff is Within the Zone of Interests Sought to Be Protected ............................ 20

     2.   Traceability ..................................................................................... 21

       (i)   Plaintiff's Injury is Indisputably Traceable to Defendant Donald John Trump's Unconstitutional Candidacy .................................................................................... 21

     3.   Redressability: Enjoin the State from Placing Defendant Donald John Trump on any 2024 Ballots ................................................................................................... 22

         *(1)*   Federal Question Being Answered is the Prerequisite to Relief .......................... 22

         *(2)*   Declaratory Judgments are the Remedies that Would Redress Plaintiff's Injury by Aiding in the Removal of an Unconstitutional and Disqualified Political Competitor 23

           (I)   Declaration Whether Trump Provided Aid or Comfort to Insurrectionists ..... 23

(II)    If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump be Enjoined from Campaigning as that Would Be Knowingly Fraudulent Misrepresentation .......................................................................................... 23

(III)    If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump Be Enjoined from the Unconstitutional Act of Submitting a State Ballot Access Application ......................................................................................................... 23

(IV)    If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could the Declaratory Judgment Permit State-Level Enforcement to Enjoin State Election Authorities from Accepting the Ballot Application ...................................... 24

(V)    Does Plaintiff Have Standing to Enjoin the Republican Party from Nominating Trump24

(VI)    Alternatively, as a Write-In General Election Candidate, Does Plaintiff Have Standing to Enjoin Trump's Inauguration .................................................................. 24

(VII)   Lastly, Declaratory Relief Act Relaxes Redressability Analysis .................... 25

B.    Section 3 of the 14th Amendment is Self-Executing .......................................................... 25

1.    Anti-Insurrection Qualification Section .......................................................................... 26

2.    Amendment XIV, Section 3, Clause 1 ........................................................................... 27

3.    Amendment XIV, Section 3, Clause 2 ........................................................................... 31

4.    The Scope of Amendment XIV ....................................................................................... 31

5.    Enforcement of Amendment XIV ................................................................................... 33

6.    Plaintiff Has Stated a Valid Claim Upon Which Relief Can and Must Be Granted ...... 35

C.    Injunctive Relief ................................................................................................................ 36

(1)    Substantial Likelihood of Success on the Merits ................................................ 36

(2)    Substantial Threat of Irreparable Harm Without an Injunction ........................... 37

(I)    Irreparability of the Injury ............................................................................... 37

(II)    Degree of the Threat ....................................................................................... 37

(III)    Infringement of Constitutional Rights and Protections ................................... 37

(3)    Actual Sustained Harm and Threat of Further Injury Outweighs the Harm that an Injunction Would Cause Defendant .............................................................................. 38

(4)    Injunction Will Not Disserve the Public Interest ................................................ 38

## TABLE OF AUTHORITIES

**Cases**

*Aaron Enterprises, Inc. v. Federal Insurance Company,*
  415 F.Supp. 3d 595 (E.D. Pa. 2019) ............................................................................... 16

*Abbot Labs. v. Gardner,*
  387 U.S. 136 (1967) ........................................................................................................... 15

*Aralac, Inc. v. Hat Corp. of Am.,*
  166 F.2d 286 (3d Cir. 1948) ............................................................................................ 21

*Art-Metal-USA, Inc. v. Solomon,*
  473 F. Supp. 1 (D.D.C. 1978) .......................................................................................... 17

*Bivens v. Six Unknown Fed. Narcotics Agents,*
  403 U.S. 388 (1971) .......................................................................................................... 34

*Butler,*
  2 Bart. El. Cas. 461 (1868) ............................................................................................... 30

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79 (1981) ............................................................................................................ 37

*Case of Davis,*
  7 F. Cas. 63 (C.C.D. Va. 1867) ....................................................................................... 32

*Competitive Enter. Inst. v. NHTSA,*
  901 F.2d 107 (D.C. Cir. 1990) ......................................................................................... 21

*Council of Alternative Political Parties v. Hooks,*
  121 F.3d 876 (3d. Cir. 1997) ........................................................................................... 36

*Dayao v. Staley,*
  303 F. Supp. 16 (S.D. Tex. 1969), *aff'd,* 424 F.2d 1131 (5th Cir. 1970) .................................. 16

*Doe v. Mattis,*
  928 F.3d 1 (D.C. Cir. 2019) ............................................................................................. 18

*Duggins v. Hunt,*
  323 F.2d 746 (10th Cir. 1963) ......................................................................................... 22

*Elrod v. Burns,*
  427 U.S. 347 (1976) .......................................................................................................... 36

*Fulani v. Brady,*
  935 F.2d 1324 (D.C. Cir. 1991) .............................................................................. 13, 14, 15

*Gottlieb v. FEC,*
  143 F.3d 618 (D.C. Cir. 1998) ......................................................................................... 13

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
  735 F. Supp. 581 (S.D.N.Y. 1990) .................................................................................. 16

*GTE Directories Pub. Corp. v. Trimen America, Inc.*,
   67 F.3d 1563 (11th Cir. 1995) ................................................................................................ 15

*Hassan v. FEC*,
   893 F. Supp. 2d 248 (D.D.C. 2012), *aff'd*, No. 12-5335,
   2013 WL 1164506 (D.C. Cir. 2013) ....................................................................................... 13

*Hum. Res. Mgmt., Inc. v. Weaver*,
   442 F. Supp. 241 (D.D.C. 1977) ............................................................................................ 18

*In re Griffin*,
   11 F. Cas. 7 (C.C.D. Va. 1869) ................................................................................. 28, 31, 32

*Lawton's Case*,
   18 Op.Atty.Gen. 149 (1885) ................................................................................................... 30

*League of Women Voters of the U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) .................................................................................................... 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ................................................................................................................ 21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................ 12

*Massachusetts L. Reform Inst. v. Legal Servs. Corp.*,
   581 F. Supp. 1179 (D.D.C. 1984), *aff'd sub nom.*, 737 F.2d 1206 (D.C. Cir. 1984) ............... 17

*McGraw-Edison Co. v. Preformed Line Prod. Co.*,
   362 F.2d 339 (9th Cir. 1966) .................................................................................................. 22

*McKee v. Young*,
   2 Bart. El. Cas. 422 (1868) ..................................................................................................... 28

*Nat'l Cancer Hosp. of Am. v. Webster*,
   251 F.2d 466 (2d Cir. 1958) ................................................................................................... 21

*New World Radio, Inc. v. FCC*,
   294 F.3d 164 (D.C. Cir. 2002) ............................................................................................... 13

*Plains All Am. Pipeline L.P. v. Cook*,
   866 F.3d 534 (3d Cir. 2017) ................................................................................................... 15

*Powell v. McCormack*,
   395 U.S. 486 (1969) ................................................................................................................ 33

*Public Citizen v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015) ............................................................................................... 21

*Raines v. Byrd*,
   521 U.S. 811 (1997) ................................................................................................................ 12

*Richardson v. Trump*,
   496 F. Supp. 3d 165 (D.D.C. 2020 ........................................................................................ 19

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020) ............................................................................................... 36

*Shays v. FEC*,
   414 F.3d 76 (D.C. Cir. 2005) ................................................................................. 13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................... 12

*Step-Saver Data Sys., Lnc. v. Wyse Tech.*,
   912 F.2d 643 (3d Cir. 1990) .................................................................................. 15

*Tanzin v. Tanvir*,
   141 S. Ct. 486 (2020) ............................................................................................. 26

*TikTok Inc. v. Trump*,
   507 F.Supp. 3d 92 (D.D.C. 2020) ......................................................................... 19

*U.S. v. Powell*,
   65 N.C. 709 (C.C.D.N.C. 1871) ............................................................. 26, 30, 33

*Walker Process Equip., Inc. v. FMC Corp.*,
   356 F.2d 449 (7th Cir. 1966) ................................................................................. 21

*Whole Woman's Health v. Jackson*,
   141 S. Ct. 2494 (2021) ........................................................................................... 35

**Constitution**

U.S. Const. art. I, § 4 ...................................................................................................... 9

U.S. Const. art. II, § 1 .................................................................................................. 25

U.S. Const. art. III, § 2 ................................................................................................ 12

U.S. Const. art. III, § 3 .......................................................................................... 25, 28

U.S. Const. amend. XIV ..................................... 14, 20, 24, 25, 26, 27, 30, 31, 32, 33

**Statutes and Legislation**

18 U.S.C. § 2384 .......................................................................................................... 33

28 U.S.C. § 455 ............................................................................................................ 27

28 U.S.C. § 1292(a)(1) ................................................................................................. 37

28 U.S.C. § 1331 ............................................................................................................ 8

28 U.S.C. § 1391(b)(1) ................................................................................................... 9

28 U.S.C. § 2201(a) ............................................................................ 16, 22, 23, 24, 34

*Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140 .................. 33

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................ 8

Fed. R. Civ. P. 11(c)(2) ................................................................................................ 16

Fed. R. Civ. P. 65(b)(1)(A)-(B) ................................................................................................ 34

**Other Authorities**

C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of Jefferson Davis*, 42 Akron L. Rev. 1165 (2009) .................................................................. 28

Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898* (1953) ................. 28

Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013) ........................... 33

Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877* (1988) ...................... 29

Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment, 36 Const. Comment. 87 (2021) ............................................................................................................ 32

Merriam-Webster's Collegiate Dictionary ................................................................................ 26

J.G. Randall, *The Civil War and Reconstruction 707* (1937) ....................................................... 28

Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584 (2012) ......................................................... 29

<u>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

TO THE HONORABLE COURT:

Plaintiff, JOHN ANTHONY CASTRO, *pro se*, files this Verified Complaint for Declaratory and Injunctive Relief against Defendants Secretary of State and Donald John Trump, in strict conformity with Fed. R. Civ. P. 8(a) for Section I "Claim for Relief," and, in support thereof, alleges as follows:

## I.   CLAIM FOR RELIEF

### A.   JURISDICTION

1.      Because this cause of action arises under Section 3 of the 14th Amendment to the U.S. Constitution, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

### B.   PARTIES

2.      Plaintiff John Anthony Castro is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election who currently resides at 12 Park Place in Mansfield, Texas.

3.      Defendant Secretary of State is a representative of the state being sued in official capacity.

4.      Defendant Donald John Trump is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P80001571) for the 2024 Presidential Election who currently resides at 1100 South Ocean Boulevard in West Palm Beach, Florida.

5.      Defendant Donald John Trump is a nominal defendant.

## C. VENUE

6.      Because Defendant Secretary of State operates in this district, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).  Defendant Donald John Trump is a nominal defendant.

## D. ENTITLEMENT TO RELIEF

7.      Because this state permits write-in candidates and their votes to be counted, ballot placement is not legally determinative of the legal inquiry as to whether an individual is a "candidate" under state law.  Moreover, the U.S. Constitution, Article 1, Section 4, Clause 1, also known as the Election Clause, does not apply to Presidential elections and Presidential candidate eligibility.  "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  The unambiguous and plain language of the clause shows that it is limited to Congressional elections.  As such, it is the province of the federal judiciary to determine this federal question with zero involvement from the state.

8.      Section 3 of the 14th Amendment created an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility on the grounds that they engaged in or provided "aid or comfort" to an insurrection.

9.      On September 29, 2020, then Commander-in-Chief of the United States Armed Forces issued an executive military order to a paramilitary organization known as the Proud Boys that was led by Chairman Enrique Tarrio when he instructed them on live television to "stand back and standby."

10.     On January 6, 2021, after witnessing a large group of Trump supporters violently attacking the United States Capitol to prevent the lawful certification of the 2020 election results with the goal of unlawfully compelling Donald John Trump's inauguration on January 20, 2021 (hereafter referred to as the "January 6th Insurrection"), Defendant Donald John Trump stated on live television, "we love you, you're very special" to the insurrectionists.  Defendant Donald John Trump provided the insurrectionists with comfort in the form of words of sympathy.

11.     On January 29, 2022, Defendant Donald John Trump publicly stated, "If I run and if I win, we will treat those people from January 6 fairly. We will treat them fairly. And if it requires pardons, we will give them pardons."  Defendant Donald John Trump promised the insurrectionists aid in the form of executive pardons for their criminal attempt to unlawfully overturn the 2020 election results.

12.     On May 4, 2023, Proud Boys Chairman Enrique Tarrio was convicted of Seditious Conspiracy.  Sedition and Insurrection are synonymous terms.  In effect, Enrique Tarrio, the individual to whom Defendant Donald John Trump issued an executive military order, was convicted of conspiracy to commit an insurrection.

13.     On June 22, 2023, Defendant Donald John Trump hosted a fundraiser for the January 6 insurrectionists thereby assisting in the acquisition of financial aid for their legal bills.

14.     Based on these instances and other acts of ratification of the acts of and sympathy with the convicted criminals of the January 6th Insurrection, Defendant Donald John Trump provided "aid or comfort" to an insurrection in violation of Section 3 of the 14th Amendment to the U.S. Constitution and is, therefore, constitutionally ineligible to pursue or hold any public office in the United States.

15.     Because Plaintiff is a fellow FEC-registered Republican primary candidate,

Plaintiff will suffer an injury that may be redressed by the judiciary with injunctive relief.

### E. DEMAND FOR RELIEF

16.    Plaintiff John Anthony Castro asks this Court to issue an injunction preventing Defendant Secretary of State from accepting and/or processing Defendant Donald John Trump's ballot access documentation, including, but not limited to, nominating papers and nominating petitions.

17.    Plaintiff requests any other relief he may be entitled to at law or equity.

## II. SUMMARY OF THE ARGUMENT

18.    Because Plaintiff is a Republican Presidential candidate actively competing against Defendant Donald John Trump for the nomination of the Republican Party to pursue the Office of the Presidency in the general election in 2024, Plaintiff has standing to pursue a claim regarding Defendant Donald John Trump's qualifications and eligibility to be a candidate. Section 3 of the 14th Amendment is self-executing thereby providing an implied cause of action directly thereunder to an individual with judicial standing to enforce the provision. Plaintiff's claim is that Defendant Donald John Trump "engaged" in the insurrection with convicted insurrectionist Enrique Tarrio via direct military orders to "stand back and stand by" and provided "aid or comfort" to other insurrectionists in the form of financial fundraising, expressions of sympathy with the insurrectionary movement, and promises of pardons for those who violently attacked our United States Capitol on January 6, 2021. Because the goal of the insurrection was to thwart the peaceful transfer of power via the Electoral College's certification of the election results and to unlawfully compel the re-inauguration of then-President and current Defendant Donald John Trump, this was indisputably an insurrection that Defendant Donald

John Trump previously did and presently continues to provide both aid and comfort to. As such, Plaintiff seeks a declaratory judgment that Defendant Donald John Trump is disqualified under Section 3 of the 14th Amendment. Furthermore, Plaintiff seeks an injunction against Defendant Secretary of State to prevent the acceptance and/or processing of any ballot access documentation of Defendant Donald John Trump for both the primary election and general election.

### A. PLAINTIFF HAS POLITICAL COMPETITOR STANDING

19.    Plaintiff John Anthony Castro intends to either appear on the 2024 Republican primary ballot in this state or to file documentation to be a formally recognized write-in candidate in both the primary and general elections. As such, Plaintiff will maintain "standing" throughout the entire course of this litigation until Tuesday, November 5, 2024, at which time standing will have to be reassessed depending on the circumstances as Plaintiff may still have an injury after the election warranting continued review by the federal judiciary.

20.    The Constitution limits the jurisdiction of the federal courts to actual cases or controversies.[1] "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue."[2] The doctrine of standing, "rooted in the traditional understanding of a case or controversy… developed… to ensure that federal courts do not exceed their authority as it has been traditionally understood."[3] "[T]he 'irreducible constitutional minimum' of standing consists of three elements."[4] The "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

---

[1] U.S. Const. art. III, § 2, cl. 1, *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[2] *Raines*, 521 U.S. at 818.

[3] *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

[4] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[5]

21.     The United States Court of Appeals for the D.C. Circuit has recognized the concept of *Political Competitor Standing* on the basis that an injury would logically be diminution of votes traceable to the political competitor and redressable by a court.[6] Political Competitor Standing, however, is only available to plaintiffs who can show that they "personally compete[] in the same arena with the same party."[7] The D.C. Circuit has also held that if a plaintiff can show that he is a "direct and current competitor," then competitor standing must be recognized as a matter of law.[8] The federal judiciary has recognized that a candidate, as opposed to "individual voters and political action groups" would have "standing based upon a 'competitive injury'" if, again, the candidate can show that he "personally competes in the same arena with the same party."[9]

22.     Castro is an FEC-registered 2024 Republican Presidential candidate and is currently directly competing against Trump for the Republican nomination for the Presidency of the United States. As such, Castro has political competitor standing to bring this suit.

### 1.  Plaintiff Has an Injury-in-Fact

23.     To establish standing, a plaintiff must show that the plaintiff has suffered an "injury in fact caused by the challenged conduct [of the defendant] and redressable through relief

---

[5] *Id.*

[6] *See Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).

[7] *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that presidential candidate did not have "competitor standing" to challenge CPD's tax-exempt status where the candidate was not eligible for tax exempt status); *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. 2013) ("Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.").

[8] *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)

[9] *Hassan*, 893 F. Supp. 2d at 255 n.6 (D.D.C. 2012) (emphases added) (quoting *Gottlieb*, 143 F.3d at 621)

sought from the court."[10]

### (i) Diminution in Votes

24.     Castro and Trump are not only competing for the same political position within the same political party but are also appealing to the same voter base. Castro retains support from unions and his extensive experiences with union organizing is appealing to working class Americans. Similarly, Trump also does not appeal to big donors and most of his donations consist of donors giving small amounts. Consequently, Castro will be primarily targeting the same voters as Trump, and Castro will allocate a significant portion of his campaign finances to such cause.

25.     In fact, throughout his campaigning efforts to date, Castro has spoken to thousands of voters who have expressed that they would vote for Castro *only if* Trump is not a presidential candidate as they maintain political loyalty to Trump.

26.     A primary candidate has judicial standing to bring a claim challenging the eligibility of a fellow primary candidate for competitive injury in the form of a diminution of votes and/or fundraising if the primary candidate believes that the fellow primary candidate is ineligible to hold public office and to prevent actions irreconcilable with the U.S. Constitution.[11]

27.     Castro will *further* suffer *irreparable* competitive injuries if Trump, who is constitutionally ineligible to hold office, is able to attempt to secure votes in primary elections and raise funds. Trump's constitutionally unauthorized undertaking will put Castro at both a voter and donor disadvantage.

28.     Trump, without this Court's intervention, will siphon off votes in violation of

---

[10] *Shays*, 414 F.3d at 83 (internal citation omitted).

[11] *See Fulani*, 882 F.2d at 628.

Section 3 of the 14th Amendment to the U.S. Constitution.[12]   There are only 162 Republican Party candidates for the Presidency of the United States thereby identifying the actual named individuals with particularity that his candidacy is injuring.   By definition, this "particularizes" the injury.

### (ii) Ripeness of the Injury

29.     "If further factual development would help the court adjudicate the case, the case may be unripe and therefore nonjusticiable."[13]

30.     Any argument that this action is not yet ripe is contradicted by both Trump and Castro's active campaigning to secure the support of voters and donors for his Presidential candidacy.   Like Castro, Trump is a declared candidate currently courting voters and seeking funds on his campaign website: www.DonaldJTrump.com.   Castro also has an active campaign website: www.JohnCastro.com.   Put plainly, Trump and Castro are both pursuing the same voter and donor pies, and Trump is currently taking a slices of the voter and donor pie that logically reduces the available pie left for Castro.   The injury is factually real and presently happening at this very moment.   We need not wait until voters actually cast their ballot since that would make the injury an irreparable harm, render those votes irrelevant, and possibly transform this controversy into a nonjusticiable political question.

31.     Under the Declaratory Judgment Act, a case or controversy must exist at the time

---

[12] U.S. Const., art. XIV, § 3 "No person shall be a[n]...elector of President...or hold any office... under the United States,...who,...shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

[12] See Fulani, 882 F.2d at 628.

[13] Abbot Labs. v. Gardner, 387 U.S. 136 (1967).   Within the Third Circuit, the Step-Saver Test is applied in declaratory judgment cases and looks to "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." Step-Saver Data Sys., Lnc. v. Wyse Tech., 912 F.2d 643 (3d Cir. 1990); see Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539-540 (3d Cir. 2017).

the declaratory judgment action is filed.[14]  However, despite Plaintiff evidencing the ripeness of this controversy, the Declaratory Judgment Act was designed to declare the rights and legal relations and issues between parties prior to ripeness and to assist the parties in determining possible options for redressability, if any.[15]  The Declaratory Judgment Act is designed to enable courts to declare rights of adverse parties to lawsuit even though that suit may not have ripened to a point at which an affirmative remedy is needed.[16]  As such, the standard for a judgment under the Declaratory Judgment Act is whether such judgment would *merely* be useful.[17]

32.     A declaratory judgment is an opportunity for a party to determine the point at which a controversy would ripen in order to seek prompt resolution by a court rather than waiting for an opposing party with a ripe injury or controversy to sue, particularly where delay in seeking judicial intervention will cause substantial prejudice to a declaratory judgment plaintiff.[18]

### *(1)* Fitness of the Issue: Plaintiff is an Active 2024 Presidential Candidate

### *(I)  Plaintiff is a Bona Fide Candidate*

33.     Trump has previously characterized Castro's judicial efforts to enforce the U.S. Constitution as a "publicity stunt" by Castro.  Such an assertion can only be interpreted as Castro initiating an action either for an improper purpose or as a planned civil action designed to draw the public's attention to Castro's presidential campaign.  Because Trump has not moved for sanctions pursuant to Fed. R. Civ. P. 11(c)(2), Trump's characterization must be the latter.[19]

---

[14] *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563 (11th Cir. 1995).
[15] 28 U.S.C. § 2201(a) ("[W]hether or not... relief... could be sought.")
[16] *Dayao v. Staley*, 303 F. Supp. 16 (S.D. Tex. 1969), *aff'd,* 424 F.2d 1131 (5th Cir. 1970)
[17] *Aaron Enterprises, Inc. v. Federal Insurance Company*, 415 F.Supp.3d 595 (E.D. Pa. 2019).
[18] *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581 (S.D.N.Y. 1990)
[19] Fed. R. Civ. P. 11(c)(2)

34.     Plaintiff John Anthony Castro has received a full feature article in Newsweek and Knewz as well as recognition as a Republican Presidential Candidate in the Associated Press, New York Times, Fox News, ABC, NBC, Washington Post, Boston Globe, and Seattle Times.

### (II) *Not Remote or Abstract: The Competition for Votes Has Already Begun*

35.     This complaint is not remote or abstract.  Both Castro and Trump are registered and declared candidates.  Nikki Haley announced her candidacy by releasing only a website and a single campaign video.  Castro, on the other hand, has been actively seeking to declare Trump constitutionally unqualified since early 2022.  Castro has been actively pursuing his legal strategy as part of his Presidential campaign for over two years now.

36.     Many legal scholars have conflated active candidacy with ballot access while ignoring the fact that many states allow for write-in candidacies.  Ballot access does not control the legal determination of whether an individual is a candidate.  There are many examples of successful write-in candidacies by candidates who did not appear on the ballot.  Castro has a campaign website, publicly declared his candidacy *before* Trump, has been actively campaigning for political support on social media, has been pursuing Trump's disqualification for over two years now, and has been covered by the national media for his pursuit of Trump's disqualification.  Castro is a current and active 2024 Republican Presidential candidate.

### (2) Threat of Severe Hardship if Judgment Withheld

37.     A lack of court intervention would result in an irretrievable loss of both votes and donor funds.  Castro has been and *presently is* being harmed by Trump's actions.  As such, relief at later time would not compensate Castro for his competitive injuries in the form of diminution

of votes and funds.[20]  Both issues must be properly considered in determining the ripeness of this controversy.[21] There is no mechanism to redistribute cast primary ballots or refund political contributions that donors make to Trump in order to make those votes and funds available to eligible candidates.  Cash is an inherently finite and limited resource.  As such, once those voters have cast their ballots and/or donors have given their available dollars to an ineligible candidate, they are forever lost.

38.     When an individual has no other opportunity to pursue judicial review, there is irreparable harm.[22]

39.     Additionally, the federal court is the appropriate judiciary; Castro cannot pursue judicial review of the competitive injury in the form of diminution of votes and funds at the state level because the injury stems from Trump's ineligibility pursuant to Section 3 of the 14th Amendment, which is a federal question removable to and/or reversible by a federal court.  The Election Clause in the U.S. Constitution only applies to Congressional elections.  Hence, Castro seeks a declaratory judgment now as well as injunctive relief before the commencement of the primary elections.

40.     While the mere presence of a constitutional question is not *de jure* irreparable harm, the controversy is ripe for judicial action if it causes an injury to an individual, is within the zone of interests sought to be protected by a constitutional provision, is based on a lack of alternative and timely remedies, and threatens the loss of votes and donors.[23]

---

[20] *Massachusetts L. Reform Inst. v. Legal Servs. Corp.*, 581 F. Supp. 1179, 1187 - 1188 (D.D.C. 1984), *aff'd sub nom.*, 737 F.2d 1206 (D.C. Cir. 1984)
[21] *Art-Metal-USA, Inc. v. Solomon*, 473 F. Supp. 1 (D.D.C. 1978)
[22] *Doe v. Mattis*, 928 F.3d 1 (D.C. Cir. 2019)
[23] *Hum. Res. Mgmt., Inc. v. Weaver*, 442 F. Supp. 241 (D.D.C. 1977).

### *(I) Withholding Consideration Would Result in Plaintiff Losing Voters and Donors to a Constitutionally Disqualified Candidate*

41.     In *Tiktok v. Trump*, the D.C. District Court held that an *irreparable* competitive injury will be found if the alleged misconduct pushes monetizable individuals to alternative options because those individuals are unlikely to return after they have chosen another option, which results in an eroding of a competitive position.[24]

42.     Here, the fact pattern is legally identical: Castro declared his candidacy before Trump and is now losing potential supporters and donors to Trump, which is eroding his competitive position as those potential supporters and donors would be unlikely to ever return unless Trump was no longer a candidate.

### *(II) Withholding Consideration Would Risk the Controversy Not Being Timely Addressed by the U.S. Supreme Court Before the Primary Elections Thereby Mooting the Issue and Forever Denying Plaintiff Any Relief and Redressability*

43.     Where there could be no redress after a coming deadline, there will be a finding of irreparable harm.[25] Here, any delay risks this injury becoming irreparable and possibly mooting or transforming the case into a non-justiciable political question as the 2024 Presidential Election nears closer. It is prudent to address these issues early, and now is the appropriate time.

44.     The risk of violating the U.S. Constitution and the fact that there could be no do-over or redress once the election has begun is sufficient to establish a ripeness of the controversy, a justiciable injury-in-fact, and the very real threat of irreparable harm by erosion of competitive

---

[24] *TikTok Inc. v. Trump*, 507 F.Supp. 3d 92 (D.D.C. 2020).
[25] *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)

position.[26]

45.     This case will involve an inevitable appeal to the United States Court of Appeals for this circuit as well as the United States Supreme Court.  Castro cannot wait until both Castro and Trump are state-registered candidates because that would guarantee that the injury would become irreparable, possibly moot the case, possibly transforms the case into a non-justiciable political question, or expose the Republican Party to irreparable harm as they could lose their party's presumptive or actual nominee after millions of Americans cast their ballots in the primaries.  Delaying judicial review of these questions would be a constitutional crisis of the federal judiciary's own making.  Castro implores the federal judiciary to avoid unintentionally engineering a crisis.  If the federal judiciary addresses these issues now via the Declaratory Judgments Act and injunctive relief, the Republican Party would have time to recover by funding, supporting, and nominating a constitutionally eligible candidate.

*(III)*      ***Withholding Consideration Would Compel Plaintiff to Invest Millions of His Own Funds to Campaign with Lower Odds of Success***

46.     Withholding consideration at this stage would compel Castro to spend millions of dollars of his own funds to continue being competitively injured and to compete against a constitutionally unqualified and ineligible candidate with much lower odds of success.  For that reason, it is prudent for the federal judiciary to exercise its jurisdiction and consider these matters now.

*(iii)Plaintiff is Within the Zone of Interests Sought to Be Protected*

47.     Section 3 of the 14th Amendment protects a person from having to politically

---

[26] *Richardson v. Trump*, 496 F. Supp. 3d 165 (D.D.C. 2020).

compete against a pro-insurrectionist politician. This is a federally protected interest under Section 3 of the 14th Amendment.

48.     Section 3 of the 14th Amendment was specifically designed to ensure that non-insurrectionists did not have to politically compete with the more politically popular pro-insurrectionist politicians in the South.   The framers of Section 3 of the 14th Amendment specifically designed it to remove overwhelming popular pro-insurrectionists from the ballot.  As such, Castro is not simply within the "zone" of interests; Castro is the precise type of person that the framers of Section 3 of the 14th Amendment specifically sought to politically protect while Trump is the precise type of person they sought to disqualify.

49.     Although the U.S. Supreme Court arguably abolished the doctrine of prudential standing in *Lexmark*,[27] Castro satisfies prudential standing in that his injury is particularized and concrete, he satisfies Article III standing (injury, traceability, and redressability), and he is within the zone of interests sought to be protected by Section 3 of the 14th Amendment to the U.S. Constitution.[28]

### 2.   Traceability

#### (i)   *Plaintiff's Injury is Indisputably Traceable to Defendant Donald John Trump's Unconstitutional Candidacy*

50.     It is indisputable that Castro's injury-in-fact is traceable to Trump.

---

[27] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)
[28] *Public Citizen v. FEC*, 788 F.3d 312 (D.C. Cir. 2015).

### 3. Redressability: Enjoin the State from Placing Defendant Donald John Trump on any 2024 Ballots

51.     "Plaintiffs need not prove that granting the requested relief is certain to redress their injury, especially where some uncertainty is inevitable."[29]  Nevertheless, the "Declaratory Judgment Act created... a new remedy."[30]  Castro can only interpret Trump's objection on these grounds as a *de facto* request for more definitive statements on what forms of declaratory judgments Castro precisely seeks.  The following are the more definitive statements on the precise types of declaratory relief Castro seeks:

### *(1)* Federal Question Being Answered is the Prerequisite to Relief

52.     Whether Trump's actions, words, and/or conduct with regard to the January 6, 2021, insurrectionary attack on the United States Capitol rise to the level of providing "aid or comfort" to the insurrection is a question of federal law.  Before Castro can pursue any relief, this federal question must be answered.  The process by which that question is answer can be had through the Declaratory Judgments Act.  A declaratory judgment would answer all of these questions and clarify the rights and legal relations between Castro and Trump.[31]

---

[29] *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 118 (D.C. Cir. 1990).
[30] *Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir. 1966); also see *Nat'l Cancer Hosp. of Am. v. Webster*, 251 F.2d 466 (2d Cir. 1958); *Aralac, Inc. v. Hat Corp. of Am.*, 166 F.2d 286, 290 (3d Cir. 1948).
[31] *See McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) ("The purpose of the Declaratory Judgment Act is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim.'"); *also see Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963) ("The general purpose of the Declaratory Judgment Act... is to provide an immediate forum for the adjudication of rights and obligations in actual controversy where such controversy may be settled in its entirety and with expediency and economy.").

**(2) Declaratory Judgments are the Remedies that Would Redress Plaintiff's Injury by Aiding in the Removal of an Unconstitutional and Disqualified Political Competitor**

*(I)  Declaration Whether Trump Provided Aid or Comfort to Insurrectionists*

53.     Pursuant to 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of" Castro and Trump, including whether Trump is constitutionally eligible to pursue and/or hold the Office of the Presidency of the United States on the factual assertion that he provided aid or comfort to the January 6 Insurrectionists.

*(II) If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump be Enjoined from Campaigning as that Would Be Knowingly Fraudulent Misrepresentation*

54.     Pursuant to 28 U.S.C. § 2201(a), this Court "may declare" whether, if Trump was found to have provided aid or comfort to the January 6 Insurrectionists, Castro has the legal right to enjoin Trump from campaigning for the Presidency since that would violate Section 3 of the 14th Amendment, FECA, and/or constitute knowingly fraudulent misrepresentation regarding eligibility.

*(III)      If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump Be Enjoined from the Unconstitutional Act of Submitting a State Ballot Access Application*

55.     Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights"

of Castro as to whether he can secure an injunction to prevent the unconstitutional act of Trump submitting a state ballot access application.  In other words, whether the Court can issue an injunction preventing Trump from engaging in the unconstitutional act of submitting a state ballot access application since that would be violative of his disqualification from public office pursuant to Section 3 of the 14th Amendment.

> ### (IV)      If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could the Declaratory Judgment Permit State-Level Enforcement to Enjoin State Election Authorities from Accepting the Ballot Application

56.      Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights" of Castro as to whether he has standing and the right to secure an injunction to prevent individual state election authorities from accepting and processing Trump's state ballot access application.

> ### (V) Does Plaintiff Have Standing to Enjoin the Republican Party from Nominating Trump

57.      Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights" of Castro as to whether he would have standing and the right to secure an injunction against the Republican Party to prevent his formal nomination at the Republican National Convention if Trump won the primary election.

> ### (VI)      Alternatively, as a Write-In General Election Candidate, Does Plaintiff Have Standing to Enjoin Trump's Inauguration

58.      Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights"

of Castro as to whether he, having declared and verified his intention to be a write-in candidate for the general election if he is unsuccessful in securing the nomination of the Republican Party, would have standing and the right to secure an injunction against the Joint Congressional Committee on Inaugural Ceremonies preventing the inauguration of Trump if Trump won the general election.

*(VII)*      ***Lastly, Declaratory Relief Act Relaxes Redressability Analysis***

59.      The Declaratory Judgment Act does not even require that relief could be sought. Pursuant to 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of" Castro and Trump on "whether or not further relief is or *could be sought*." The key phrase here is "whether or not further relief... *could* be sought." According to 28 U.S.C. § 2201(a), it is not required that relief could be sought at the time of the filing. The Court can still "declare the rights" of Castro and Trump, including their "legal relations," such as the constitutional disqualification of Trump and Castro's standing to disqualify Trump from pursuing and/or holding public office.

60.      In essence, the redressability inquiry is relaxed because the declaratory judgments are the redressable relief that would remedy Castro's injuries.

**B. SECTION 3 OF THE 14TH AMENDMENT IS SELF-EXECUTING**

61.      The framers of Section 3 of the 14th Amendment intended the constitutional provision to be both self-executing and to provide a cause of action. More specifically, the Union sought to punish the insurrectionary Confederacy by making their ability to hold public office unconstitutional. The framers did this with the specific intent of removing the more politically popular insurrectionists from the ballot since they violated their oaths of allegiance to

the U.S. Constitution and the use of peaceful political mechanisms to non-violently resolve disputes.

62.     Article II, Section 1 of the United States Constitution states that any person who enters the Office of the President of the United States of America shall take the following Oath or Affirmation: "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my ability, preserve, protect and defend the Constitution of the United States."

63.     Since the founding of our nation, those who assume civil or military positions under federal or state law are required to take an oath and thereby state that they will defend the Constitution of the United States against all enemies, foreign and *domestic.*

64.     Taking the side of a foreign enemy is covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. It states: "Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid *and* Comfort."

65.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution covers taking the side of a *domestic* enemy.

### 1. Anti-Insurrection Qualification Section

66.     Section 3 of the 14th Amendment of the United States Constitution is best described as the Anti-Insurrection Qualification Clause. It establishes that, in order to be eligible to hold any office in the United States, a person must have never violated an Oath of Office, which always includes a pledge to support the United States Constitution.

67.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution states that "[n]o person shall be a Senator or Representative in

Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have *engaged in* insurrection or rebellion against the same, or given *aid or comfort* to the enemies thereof. But Congress may by a vote of two-thirds of *each* House, remove such disability."

### 2. Amendment XIV, Section 3, Clause 1

68.    Clause 1 of Section 3 of the 14th Amendment of the United States Constitution reads: "No person shall... hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath... to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

69.    The word "engaged" for the purpose of Section 3 of the 14th Amendment "implies, and was intended to imply, a voluntary effort to assist the Insurrection... And further, the... action must spring from [a] want of sympathy with the insurrectionary movement."[32]

70.    As the U.S. Supreme Court has articulated, "[w]ithout a statutory definition, [one must] turn to the phrase's plain meaning."[33]

71.    Merriam-Webster's Dictic....y defines an "insurrection" to be "an act or instance of revolting against civil authority or an established government." An instance is "a step, stage, or situation viewed as part of a process or series of events." Participation in the early or late

---

[32] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[33] *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) (thereafter referencing Merriam-Webster's Collegiate Dictionary for the plain meaning of a term).

stages of an event still constitute "an instance."  This would apply to the wife of United States Supreme Court Justice Clarence Thomas, Virginia Thomas, requiring Justice Thomas' mandatory recusal under 28 U.S.C. § 455, which Plaintiff asserts herein to preserve for appeal.

72.     Of the term "revolting," Merriam-Webster says "to renounce... subjection." Renounce is to "refuse to follow, obey, or recognize." Subjection is being "placed under authority." Thus, an insurrection include all stages of the event wherein at *at least one stage* there was a refusal to recognize the authority of an established governmental body, such as the United States Senate and its ceremonial reading of the certified election results and engaging in violence to undermine *both* that process and the United States Constitution.

73.     Defendant Donald John Trump summoned *his* mob to *our* nation's Capitol, organized and assembled the mob, allowed weapons in the crowd by ordering security to let them pass, radicalized the mob with incendiary rhetoric, ordered them to march to the Capitol, refused to make public statements to denounce the violence and call off the mob for 187 minutes, and when it became clear that the mob had failed to use violence to prevent the certification of the election results, then and only then, did former President Donald J. Trump order the mob to go home, but not before saying "we love you" and calling the violent mob "very special" after they had violently attacked the United States Capitol.  All of these instances were part of the overall January 6 Insurrection in which Donald J. Trump was directly and irrefutably involved.

74.     Clause 1 of Section 3 of the 14th Amendment to the United States Constitution declares that anyone deemed to have engaged in insurrection are "enemies." However, less focus is given to the fact that Section 3 similarly disqualifies those who have given "aid or comfort" to insurrectionists.

75.     "Aid or comfort may be given to an enemy by words of encouragement, or the

expression of an opinion, from one occupying an influential position."[34]

76.     There is a distinction between domestic "aid or comfort" to insurrectionists and foreign "aid and comfort" to invaders. This was highlighted by President Andrew Johnson's comments to a New Hampshire delegation that "Treason is a crime and must be punished as a crime... It must not be excused as an unsuccessful rebellion."[35]  It was later reasoned that if "insurrection and levying war was accepted as treason, hundreds of thousands of men, most of them youths, were guilty of the offense that carried a mandatory sentence of death by hanging."[36] "To the Congress, the old law was unworkable for the [Civil War]... [thus, on] July 31, 1861, Congress passed a law which provided that anyone found guilty of conspiracy to overthrow the United States Government or to interfere with the operation of its laws shall be guilty of a high crime."[37]

77.     "The offenses for which exclusion from office is denounced are not merely engaging in insurrection... but the giving of aid or comfort to their enemies."[38]  In that case, Judge Chase, whom himself was balancing his need for impartiality with his desire to pursue the Presidency, insinuated that the inclusion of the "aid or comfort" disqualifier in Section 3 of the 14th Amendment applied only in the context of a foreign invasion or war.  Judge Chase was an abolitionist but still an ambitious and aspiring politician who considered campaigning for the Presidency and did not want to upset the South by declaring that the reference in Section 3 to "enemies" applied to the insurrectionists and rebels that fought for the Confederacy.  Giving "aid and comfort" to foreign enemies was already covered by the Treason Clause in Article III,

---

[34] *McKee v. Young*, 2 Bart. El. Cas. 422 (1868).
[35] *See* J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original).
[36] *See* Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898*, at 4 (1953).
[37] *See* C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of Jefferson Davis*, 42 Akron L. Rev. 1165, 1165 (2009).
[38] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

Section 3, Clause 1 of the United States Constitution. Section 3 of the 14th Amendment, being a post-civil war amendment, was referring solely to *domestic* enemies that engaged in insurrection or rebellion against the United States and had previously given an oath to support the Constitution; thereby only targeting higher-level officials that are required to take oaths.

78.     This is supported by the fact that the "final version of Section 3 reflected a refinement of the radicals' philosophy of formal equality. Opposition to the broader House proposal arose in part from the widespread view that many Confederate soldiers, even if not conscripted, had little real choice but to join the Southern cause. In that light, the final version of Section 3 was not less punitive so much as it was more targeted. Whereas the House version promised to affect the rank and file, the Senate version would reach only the senior leadership. Moreover, the Senate version was, in important ways, harsher than the House version. The House measure would have sunset in 1870 and applied only to federal elections. By contrast, the final version [of Section 3] permanently rendered virtually the entire political leadership of the South ineligible for office, both state and federal. The final version of Section 3 thus reflected a nuanced view: as compared with felons, Confederate officials were more deserving of punishment and Southern foot soldiers were less so."[39]

79.     Every federal, state, and local public official that offered words of encouragement, show of sympathy, or expression of support for or defense of, the January 6 Insurrection must, pursuant to Section 3 of the 14th Amendment to the United States Constitution, be declared ineligible to hold any civil or military office in the United States at the federal, state, or local level.

---

[39] *See* Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584, 1622–23 (2012); *also see* Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877*, at 259 (1988).

### 3.  Amendment XIV, Section 3, Clause 2

80.     Clause 2 of Section 3 of the 14th Amendment to the United States Constitution reads: "Congress may, by a vote of two-third of *each* House, remove such disability." (*Emphasis added*).

81.     Plaintiff emphasizes the Constitution's use of the term "each" since there appears to be widespread misconception that only the U.S. House of Representatives is needed to remove the disqualifying disability, which stems from the 1868 case of *Butler*.[40]   Therefore, if 290 members of the U.S. House of Representatives and 67 members of the U.S. Senate vote to remove the disqualifying disability, a person otherwise ineligible to hold office under Section 3 of the 14th Amendment could hold office. In today's political climate, this is impossible.

82.     It is also critical to anticipatorily highlight that a Presidential pardon does not remove this disability since the United States Constitution provides that only Congress may lift the disability. This is contrary to an old, outdated, and clearly biased Attorney General Opinion from Southern Confederate Augustus Garland that attempted to limit its scope; it inexplicably ignored the term "each" and suggested a presidential pardon could remove the qualification disability notwithstanding the Constitution's clear and exclusive reservation and delegation of that power solely to Congress.[41]

### 4.  The Scope of Amendment XIV

83.     The disqualification applies to both civil and military positions at both the federal and state level, which has been judicially determined to even include a local constable position.[42]

---

[40] *See Butler*, 2 Bart. El. Cas. 461 (1868).
[41] *See Lawton's Case*, 18 Op.Atty.Gen. 149 (1885).
[42] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).

84. "There can be *no office* which is not either legislative, judicial, or *executive* [covered by Section 3 of the 14th Amendment because]... *it embraces every office*... [and] it was passed to punish those high in authority... for their bad faith toward the government they had sworn [in their oath of office] to support."[43]

85. "The amendment applies to all the states of the Union, to all offices under the United States or under any state, and to all persons in the category of prohibition, and for all time present and future."[44] It is a lifetime ban from public office.

86. As mentioned before, Section 3 of the 14th Amendment is merely an Anti-Insurrection Qualification Clause. It was not intended to be a punishment for someone who engaged in an insurrection or gave aid or comfort to insurrectionists any more than the Natural Born Citizen qualification clause is punitive. If you are not a natural born citizen of the United States, you cannot hold the Office of the Presidency. If you violated your oath of office by engaging in an insurrection, you cannot hold the Office of the Presidency. It's a mere qualification for the office.

87. The U.S. Supreme Court has explained that "[i]nsurrection against a government may or may not culminate in an *organized* rebellion, but a civil war always begins by insurrection against the lawful authority of the Government."[45] This case reveals that there are three tiers: (1) disorganized insurrection, (2) organized rebellion, and (3) formal civil war. Coupled with the criminal convictions for seditious conspiracy, this proves that January 6, 2021, was an insurrection covered by the scope of Section 3 of the 14th Amendment.

---

[43] *Id.*
[44] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).
[45] *The Amy Warwick*, 67 U.S. 635, 666 (1862).

### 5. Enforcement of Amendment XIV

88.     In an attempt to neutralize Section 3 of the 14th Amendment, some commentators dating as far back as 1868, in an attempt to neutralize the power of Section 3 of the 14th Amendment, developed the legal theory that this provision of the U.S. Constitution was unenforceable without enabling legislation; thus, not self-executing providing an implied cause of action.  As evidence of this, they cited Section 5 of the 14th Amendment, which states that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

89.     However, Section 5 of the 14th Amendment was only referring to the enforcement of Section 1 against belligerent states that continued to deny equal protection to all their citizens.  The framers of the 14th Amendment certainly did not intend for the other sections to be unenforceable without enabling legislation, such as Section 2 "Apportionment of Representatives," Section 4 "Validity of Public Debt," or Section 3 "Disqualification as Officers or Electors of Persons Who Have Engaged in Insurrection or Rebellion."

90.     In fact, it was the President of the Confederacy, Jefferson Davis, who, in 1868, contended that Section 3 was, in fact, self-executing and, therefore, barred his criminal trial for treason.[46]  Moreover, it was United State Supreme Court Justice Salmon P. Chase who agreed in Jefferson Davis' 1867 criminal trial that Section 3 was self-executing; thereby implicating the prohibition against Double Jeopardy.[47]  In 1868, Salmon P. Chase unsuccessfully sought the Democratic presidential nomination.

---

[46] See Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment, 36 Const. Comment. 87 (2021).
[47] See Case of Davis, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) (describing Davis' argument and the Government's response); Id. at 102 (noting the Chief Justice's view).  According to the self-executing theory, insurrection was reduced to a political crime for which the only remedy was a lifetime ban from public office thereby giving rise to a Double Jeopardy defense.  If, however, Section 3 of the 14th Amendment was not self-executing, a politician could be criminally charged for seditious conspiracy.

91. Shortly thereafter, in 1869, when a black criminal defendant challenged his conviction on the grounds that the judge who presided over his trial fought for the Confederacy and was, therefore, ineligible to preside over his trial thereby rendering his guilty verdict null and void, a racially biased Chief Justice Chase reversed his position and declared that Section 3 was not self-executing.[48] In 1872, Salmon P. Chase unsuccessfully sought the Republican presidential nomination.

92. Following these irreconcilable rulings from a clearly biased Justice Chase who could not make up his mind, Congress decided to act on its own by enacting Section 3 enforcement statutes and, shortly thereafter, federal prosecutors began bringing actions to oust ineligible officials, including half of the Tennessee Supreme Court.[49]

93. Congress' enactment of legislation was not an admission that Section 3 was not self-executing; it was to avoid the lunacy of a clearly biased, conflicted, and politically active Chief Justice that could not perform the functions of his office in a neutral, intellectual, fair, and impartial manner.

94. In 1871, Amos Powell was indicted, via an enabling statute making it a *crime* to knowingly violate Section 3 of the 14th Amendment, "for accepting the office of sheriff when disqualified from holding office by the 14th Amendment... [and the] indictment charged that the defendant knowingly accepted office under the state of North Carolina, to which he was ineligible under the provisions of the 3d section of the 14th Amendment."[50] In other words, to attach criminal penalties, enabling legislation is absolutely required since Section 3 of the 14th Amendment makes no reference to criminal penalties.

---

[48] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815).
[49] *See Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140, 143; id. at § 15 (imposing criminal penalties for knowing Section Three violations); Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013).
[50] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).

95.     Congress codified the criminal penalties at 18 U.S.C. § 2384, Seditious Conspiracy.

96.     Congress has jurisdiction to expel or exclude its own members that it determines have violated Section 3 of the 14th Amendment.[51]  However, it is unclear whether Congress can unilaterally impose said disability on the Executive Branch since that could be deemed an encroachment on a separate branch of the federal government. Nevertheless, a Congressional finding of liability would certainly aid the judiciary's fact-finding mission.

97.     Historically, the neutral finder of fact and arbiter of law has been the judiciary. Consistent with our principles of federalism and separation of powers, it is more likely that the judiciary and, in particular, the United States Supreme Court would be the only authority that the drafters of Section 3 could have possibly envisioned as being the most competent and legitimate body to determine whether an individual is ineligible under the Anti-Insurrection Qualification Clause.

### 6. Plaintiff Has Stated a Valid Claim Upon Which Relief Can and Must Be Granted

98.     The U.S. Supreme Court has held that the "contention that the federal courts are powerless to accord a litigant [relief] for a claimed invasion of his federal constitutional rights until Congress explicitly authorizes the remedy cannot rest on the notion that the decision to grant... relief involves a resolution of policy considerations not susceptible of judicial discernment."[52]

99.     The premise of the Declaratory Judgement Act is to answer the questions that

---

[51] *See Powell v. McCormack*, 395 U.S. 486 (1969).
[52] *Bivens*, 403 U.S. at 402 (Harlan, concurring opinion).

arise before the type of relief can be determined. As such, 28 U.S.C. § 2201(a) was specifically designed to circumvent the redressability requirement in a standing analysis. Nevertheless, Castro has stated a claim based on an implied cause of action directly under the self-executing Section 3 of the 14th Amendment.

## C. INJUNCTIVE RELIEF

100.   "The court may issue a temporary restraining order... only if *specific facts in... a verified complaint* clearly show that immediate and irreparable injury, loss, or damage will result... before the adverse party can be heard." Fed. R. Civ. P. 65(b)(1)(A)-(B).

101.   Rule 65, in effect, mandates a thorough reading of all of the facts in *Plaintiff's Verified Complaint for Declaratory and Injunctive Relief.*

102.   "To prevail in an application for a stay or an injunction, an applicant must carry the burden of making a strong showing that it is 'likely to succeed on the merits,' that it will be 'irreparably injured absent [relief],' that the balance of the equities favors it, and that [relief] is consistent with the public interest."[53]

### *(1)* Substantial Likelihood of Success on the Merits

103.   The facts of this case are self-evident.  Plaintiff could motion for a judgment on the pleadings after clearing the dismissal phase and likely win on that basis without further fact-finding.  Plaintiff has established a prima facie case of a violation of Section 3 of the 14th Amendment.

---

[53] *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021).

### *(2)* Substantial Threat of Irreparable Harm Without an Injunction

104.     Castro is already suffering irreparable competitive injuries because Trump, who is constitutionally ineligible to hold office, is siphoning off votes and contributions.   Trump's unconstitutional candidacy is putting Castro at both a voter and donor disadvantage.

### *(I)  Irreparability of the Injury*

105.     Votes cannot be redistributed once cast.   Financial contributions cannot be refunded once given.  This is *prima facie* irreparable harm.

### *(II) Degree of the Threat*

106.     We have passed the "degree of the threat" analysis.   Plaintiff John Anthony Castro is presently being irreparably injured every day that Defendant Donald John Trump is permitted to continue his unconstitutional candidacy.

### *(III)        Infringement of Constitutional Rights and Protections*

107.     The U.S. Supreme Court recently held that the infringement of "First Amendment freedoms, for even minimal periods of time, *unquestionably* constitutes irreparable injury." *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *also see Elrod v. Burns*, 427 U.S. 347, 373 (1976).

108.     The public interest is greatly served by preventing a violation of the United States Constitution. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883-884 (3d. Cir. 1997) (stating that in "the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights.").

109.    The United States Constitution conferred onto individuals like Plaintiff John Anthony Castro with the right to not have to politically compete with someone that either engaged in or merely provided aid or comfort to an insurrection or insurrectionists. This is a new constitutional right not previously recognized by the federal judiciary.

### (3) Actual Sustained Harm and Threat of Further Injury Outweighs the Harm that an Injunction Would Cause Defendant

110.    Plaintiff John Anthony Castro's sustained harm and ongoing harm outweighs the harm an injunction would cause Defendant Donald John Trump. We cannot ignore the intent of the framers of the Fourteenth Amendment. For they saw with their own eyes what men like Defendant Donald John Trump can do to the seams that bind our nation. They foresaw that men like Defendant Donald John Trump would not be satisfied until they spilled the blood of every American citizen that disagreed with them.

111.    Defendant Donald John Trump has promised to imprison his political enemies if re-elected President of the United States.

112.    The entire nation knows that Defendant Donald John Trump provided aid and comfort to the January 6th Insurrection. The only remaining question is whether the federal judiciary has the courage to do the right thing.

### (4) Injunction Will Not Disserve the Public Interest

113.    The public has an interest in preserving our Republic from a pro-insurrection candidate who is constitutionally disqualified and presently both a state and federal criminal defendant facing over 300 years in state and federal prison.

114.    If a denial of temporary injunctive relief will moot the issue given the time-

sensitive nature of the circumstances, it has the "practical effect" of denying preliminary injunctive relief and is, therefore, appealable under 28 U.S.C. § 1292(a)(1) as of right.  *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981).

Respectfully submitted,

September 15, 2023.                    By:   /s/ John Anthony Castro
                                             JOHN ANTHONY CASTRO
                                             12 Park Place
                                             Mansfield, TX 76063
                                             Tel. (202) 594 - 4344
                                             J.Castro@JohnCastro.com
                                             **Plaintiff *Pro Se***

## VERIFICATION

I, John Anthony Castro, declare as follows:

*1.* I am the plaintiff in the present case, a U.S. citizen, and an FEC-registered Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election.

*2.* I intend to either appear on the 2024 Republican primary ballot in this state or to file documentation to be a formally recognized write-in candidate in both the primary and general elections. As such, I will maintain "standing" throughout the course of this litigation. For example, New Hampshire is a mere ministerial fee of $1000, Montana is only $4000, West Virginia is only $2500, Kansas is only $4000, and Michigan is free; all of which Plaintiff intends to pay to appear on the 2024 Republican Primary Ballot.

*3.* I have personal first-hand knowledge of all of the factual matters set forth in this document, and, if called upon to testify or give oral arguments, I would competently do so.

*4.* Pursuant to 28 U.S.C. § 1746 and state, I verify under penalty of perjury that the entirety of the foregoing document is true and correct.

Executed on September 15, 2023.

/s/ John Anthony Castro
John Anthony Castro